```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JOHN W. SIKES,
                      Plaintiff,            05-CV-6174T

v.                                          DECISION
                                            and ORDER
JOANNE B.BARNHART,
Commissioner of Social Security,

                      Defendant.
_____
```

## INTRODUCTION

Plaintiff, John W. Sikes ("Sikes"), a minor-aged child, by his mother, Tracy Nelson, filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for Supplemental Security Insurance ("SSI"). On October 3, 2005 the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On October 17, 2005, the plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, this Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, plaintiff's motion for judgment on the pleadings is granted and the case is reversed for the calculation of benefits.

## BACKGROUND

On July 19, 2001, an application was filed on behalf of plaintiff for SSI benefits, claiming that plaintiff, a juvenile, was disabled beginning on January 1, 2000. (Tr. 58-60) On the

application form for benefits, plaintiff's mother claimed that Sikes had speech problems, was hyper active and was a slow learner. (Tr. 63) Plaintiff's application was denied by Notice dated April 2, 2002. (Tr. 27-31)

Plaintiff filed a request for a hearing before an ALJ on April 18, 2002. (Tr. 32) A hearing was held on June 17, 2004 at which plaintiff, his mother, and step-father all appeared and testified and were represented by counsel. (Tr. 324-356) In his decision dated September 21, 2004, the ALJ concluded that plaintiff was not disabled. (Tr. 16-26)  Plaintiff requested a review which was denied on October 19, 2004. (Tr. 10-12) By Notice dated February 18, 2005, the Appeals Council denied the request for review. (Tr. 5) Plaintiff commenced this action on April 14, 2005.

Plaintiff is a triplet, born at seven months gestation. (Tr. 137)  According to his mother, Sikes met all of his developmental milestones except in the area of speech and language. (Tr. 137)  At the time of the application for SSI, plaintiff was five years old and enrolled in the Headstart Program of the Rochester City School District where he received hearing and speech services. (Tr. 68) His preschool teachers noted that Sikes showed "significant delays in communication, cognitive, adaptive behaviors and social/emotional skills." (Tr. 123) He was "impulsive" and "highly distractible." (Tr. 123) His preschool teachers reported the presence of significant family dysfunction and poor attendance

2

in school. (Tr. 152) He was administered the Differential Ability Scales in December, 2000. (Tr. 152) He scored a 67 in conceptual ability and had a verbal IQ of 78 and a nonverbal reasoning IQ of 68. (Tr. 154) These scores indicated that his cognitive skills ranged from the "Intellectually Deficient to Borderline Levels." (Tr. 154)

Assessments in 2001 revealed that plaintiff had "global delays in overall functioning with borderline to mentally retarded levels of ability." (Tr. 123)  On January 3, 2001, a speech and language assessment conducted by the school district of Rochester showed that Sikes had a "wide range of delays." (Tr. 143) He showed "severe delays" in his ability to comprehend oral directions and vocabulary and "moderate delays" in his ability to recall and repeat spoken messages.  He showed "significant distractibility." (Tr. 143) Speech therapy was recommended.

On April 11, 2001, Sikes was observed and assessed by a licensed psychologist of the Rochester Hearing and Speech Center. During this assessment, the Bracken test was administered to assess Sikes' knowledge of basic concepts that are fundamental to school readiness.  On the School Readiness Composite, comprised of subtests assessing a child's knowledge of colors, letters, numbers/counting, sizes, comparisons and shapes, Sikes achieved a standard score of 88, which is in the low end of the average range. (Tr. 213) It is in the 21st percentile.  Sikes demonstrated a 36%

3

mastery of colors, 6% mastery of letters, 21% mastery of numbers/counting, 83% mastery of sizes, a 60% mastery of comparisons and a 35% mastery of shapes. (Tr. 213) Sikes' score of 79 fell in the delayed range and corresponded to the 8th percentile and to an age level of 3 to 6 years. (Tr. 214) Physically, plaintiff obtained a developmental age estimate of 42 months, which is 14 months below what is expected for a child his age and considered in the delayed range. (Tr. 214) In the academic areas including knowledge of quantity of words, numbers and colors and drawing and writing ability, Sikes was an academic age equivalent of 36 months. (Tr. 215)

A May 1, 2001 evaluation performed by the Rochester Hearing and Speech Center indicated that Sikes showed "significant delays in communication, cognitive, adaptive behavior and social/emotional skills." (Tr. 132) At that time, Sikes could not attend to any activity longer than four minutes and could not identify any shapes and more than three colors. (Tr. 132) The evaluator predicted that Sikes had a "fair" prognosis of attaining age level skills with the continuation of speech language services and special education services. (Tr. 133)

A May 22, 2001 evaluation completed by a psychologist indicated that plaintiff was functioning in the impaired range as indicated by a General Cognitive Score of 67 on the Differential Ability Scales.  School Readiness Skills were assessed in the

4

delayed range with an age equivalent score of three and a half years. His delays in the areas of fine motor skills, adaptive behavior skills in the physical and academic areas, and receptive and expressive language skills were compounded by attention difficulties. (Tr. 151) It was therefore recommended that Sikes be enrolled in a blended classroom where he would be exposed to typically developing peers while also having a special education teacher to address his multiple needs. (Tr. 151)

An Occupational Therapy Initial Evaluation conducted on July 17, 2001 showed that Sikes scored 68 in the Motor-Free Visual Perceptual Test. In this test, a score of below 85 indicates there may be difficulties in this area. Sikes also demonstrated significant delays in visual perceptual and visual motor abilities. (Tr. 130) Otherwise, Sikes' sensory systems and gross motor skills were age appropriate. (Tr. 130) The therapist recommended direct occupational therapy intervention in a small group setting. (Tr. 130)

Plaintiff's speech therapy teacher in kindergarten completed a disability form in which she indicated that Sikes did not exhibit inappropriate social interaction with peers and that his functioning and behavior had not worsened. (Tr. 247) She reported that Sikes did not have difficulty with self care activities nor any trouble completing tasks in a timely manner. (Tr. 248) She indicated that Sikes was functioning in the middle range of his

group of five students from his inclusion classroom who were receiving speech therapy. (Tr. 249) In fact, the speech teacher found that plaintiff's communication skills were his strength and that he could express all of his needs and ideas. (Tr. 249)

Plaintiff's kindergarten special education teacher also completed a disability form in November, 2001.  In it, she described Sikes as having "extreme difficulty" with understanding directions and found his communication skills to be "well below age appropriate functioning." (Tr. 255)

Sikes was evaluated by Industrial Medicine Associates on February 22, 2002. (Tr. 257) The examiner reported that plaintiff's mother claimed that when Sikes was on Ritalin, his behavior in school and at home was "excellent." (Tr. 257) The evaluator found that plaintiff "readily recalled, understood, and responded to instructions." (Tr. 258) Attention and concentration were found to be adequate. (Tr. 259) Sikes scored 70 on a Full-Scale IQ test, 76 on a Performance IQ score and 68 on a Verbal IQ score, placing overall functioning and performance functioning in the "borderline range" and verbal functioning in the "mentally deficient range." (Tr. 259) Plaintiff's mother reported that Sikes could dress, bathe and groom himself and socialized normally with other children. (Tr. 260)  The evaluator diagnosed plaintiff with Attention Deficit Hyperactivity Disorder, in remission with Ritalin,

borderline intellectual functioning and recommended continued special classroom settings. (Tr. 261)

Rochester Hearing and Speech Center evaluated plaintiff on February 25, 2002. (Tr. 271) The evaluator found that Sikes demonstrated "mild receptive language delays, moderate expressive language delays and notable delays in articulation." (Tr. 271) During the evaluation, Sikes "demonstrated age appropriate pragmatic language skills" and "age appropriate attention span during the evaluation." (Tr. 271) Based on testing performed during the evaluation, Sikes was found to have mild delays in receptive language, moderate delays in expressive language measures, mild delays in articulation but fluency was within normal limits. (Tr. 273-274) This evaluator found that Sikes had a good prognosis for improved speech and language skills over the next school year. (Tr. 274)

The records indicate that at the beginning of first grade in October, 2002, Sikes was enrolled in an inclusion class and was receiving speech and language classes three times each week and occupational therapy twice each week. (Tr. 110-111) His academic skills were estimated to be at the kindergarten level in reading, writing and math. (Tr. 111) Sikes was diagnosed with high blood pressure, a heart murmur, attention deficit disorder and hyperactivity. He was taking Ritalin to maintain better concentration and focus. (Tr. 113, 257, 307) Sikes' cognitive

functioning was described as "below average" but that he was friendly and worked well with adults. (Tr. 114)

On March 1, 2004, the child study team of plaintiff's school met to conduct an annual review of the special education services offered to Sikes. (Tr. 293) He was repeating first grade the 2003-2004 school year and was continuing to receive educational support with special area teachers in reading, writing and math as well as occupational and speech therapy. (Tr. 293) Sikes was easily distracted but was generally well behaved "particularly in the afternoon following his medication." (Tr. 293) Sikes needed adult support to complete all tasks. Although he made improvements in his academic skills, he was still below grade level. (Tr. 293)

The team recommended that plaintiff receive academic support with special area teachers in reading, writing, and math as well as occupational therapy 60 minutes per week and speech reduced to 60 minutes per week. (Tr. 293)

Plaintiff's step-father testified that plaintiff was unable to do the work required of a first grader. (Tr. 229) He also reported that Sikes was able to run and ride a bicycle. Plaintiff's mother testified that Sikes gets along well with his peers, that he knows the alphabet and can read some words. (Tr. 347) Plaintiff's testimony revealed that he could not answer a compound question, but could accurately answer simple, direct questions. (Tr. 354)

8

DISCUSSION

The Social Security Act provides that a child under the age of 18 is disabled if the child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). Determining whether a child is disabled involves a three-part analysis. 20 C.F.R. §416.924(a). First, the ALJ considers whether the child is engaged in "substantial gainful activity." Id. If so, the child will not be awarded SSI benefits. Second, the ALJ considers whether the child has "an impairment or combination of impairments that is severe." Id. "A severe impairment is an impairment that is more than a slight abnormality." Leach ex rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935 at 5 (S.D.N.Y. Jan. 22 2004)(citing 20 C.F.R. §§416.924-25). If the impairment is not severe, the child is not disabled. Third, if child's impairment is severe, the ALJ considers whether the impairment "meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a).

With regard to the functional equivalence, the third step of the analysis, the Commissioner assesses the "limitations in functioning" caused by the child's impairment. 20 C.F.R. § 416.926a(b)(2). If those limitations are the same as the

9

functional limitations caused by a listed impairment, the Commissioner will find that the child's impairment is functionally equivalent to a listed impairment and the child will be found eligible for SSI benefits.

An impairment will be found functionally equivalent to a listed impairment if it results in marked limitations in two of six domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning for minors are: "(i)[a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii)[i]nteracting and relating with others; (iv)[m]oving about and manipulating objects;([c]aring for yourself; and (vi)[h]ealth and physical well-being." 20 C.F.R. §§ 416.926a(b)(1)(i-vi). A marked impairment is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). This "more than moderate but less than extreme" limitation may "limit only one activity," as long as the degree of limitation is such that it seriously interferes with the ability to function within that activity. Id.

The ALJ found that Sikes had not engaged in substantial gainful activity during any part of the period under adjudication and that he has attention deficit hyperactivity disorder and speech and language delays which are "severe" within the meaning of 20 C.F.R. § 416.924 (c). However, the ALJ found that the

impairments do not meet or medically equal the criteria of any of the Listings. (Tr. 20) In his determination whether Sikes has an impairment or combination of impairments that is "functionally equal" to the listings, he considered the six domains and concluded that Sikes has "less than marked limitations" in the domains of acquiring and using information, attending and completing tasks, and moving about and manipulating objects. (Tr. 21-23) The ALJ found no limitations in the domains of interacting and relating with others, caring for oneself and health and physical well being. (Tr. 23-24) Because the ALJ did not find an "extreme" limitation in any one domain, nor a "marked" limitation in two domains, plaintiff's impairment did not functionally equal the severity of the listings and he was found not disabled. (Tr. 25)

Plaintiff contends that the Commissioner erred in not finding that plaintiff was disabled at step three of the analysis because there is a listing that applies to plaintiff. Specifically, medical listing 112.05, "Mental retardation: Characterized by significantly sub average general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied."  404 Subpt. P. App. 1 at medical listing 112.05. Subpart D specifies: "A verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function."  The

Commissioner admits that the ALJ failed to correctly apply the law and regulations in this case but asks for a remand arguing that the record is incomplete and further proceedings are necessary.

It is important to note that several IQ test results for plaintiff fall within the listing requirement of a score between 60 and 70.  In December, 2000, plaintiff scored a 67 in conceptual ability and had a verbal IQ of 78 and a nonverbal reasoning IQ of 68, indicating that his cognitive skills ranged from the "Intellectually Deficient to Borderline Levels." (Tr. 154)   On February 22, 2002, plaintiff scored 70 on a Full Scale IQ test, obtaining a performance IQ score of 76 and a verbal IQ score of 68, placing his overall functioning in the borderline range, and verbal functioning in the "mentally deficient range." (Tr. 259)  Both of the parties as well as the ALJ agree that plaintiff suffers from severe impairments, namely, Attention Deficit Hyperactivity Disorder and speech and language delays.  These additional mental impairments impose an additional and significant limitation of function on plaintiff.  These impairments coupled with the IQ test scores establish the necessary elements required by Listing 112.05.

<u>Commissioner's Motion for Remand</u>

Although the ALJ found J.S. not to be disabled (Tr. 25), the Commissioner acknowledges with commendable frankness that the record is incomplete and that the case should be remanded rather than reversed.  In support of its motion, as an example, the

Commissioner points out that the ALJ failed to give proper weight and consideration to the report of the Committee on Special Education (CSE) by failing to consider that "[J.S.] is seen as impulsive, highly distractible, processing a short attention span and has great difficulty attending to classroom activities" (Tr. 123, repeated at 195). The Commissioner also continues to point out that "the ALJ also ignored the evaluation that "J.S. has global delays in overall functioning with borderline to mentally retarded levels of ability." Id. In addition, the ALJ omitted minutes from the CSE which noted that J.S. was in the first grade but had academic skills estimated to be at the kindergarten level (Tr. 111, repeated at 174, 185). The ALJ also omitted minutes that reveal that J.S. is highly distractible. Id. The ALJ further ignored an Individualized Education Program (IEP) dated October 16, 2002 that noted "due to significant delays in attention, speech/language, and fine motor skills, J.S. requires the support of an Intensive Consultant teacher, Speech/Language, and Occupational Therapist." (Tr. 113, repeated at 176, 187). The ALJ also omitted the IEP assessment that revealed that J.S. had weak fine and gross motor skills and cognitive functioning was below average (Tr. 114, repeated at 177, 188). The ALJ further omitted the IEP dated January 25, 2001, which revealed that J.S.'s cognitive functioning was "significantly below average" (Tr. 163). The Commissioner concludes in its motion that "the ALJ should have

fully evaluated the IEP assessment and comments submitted by the Committee on Special Education. <u>See</u> 20 C.F.R. § 416.927; 20 C.F.R. Part 404, Subpart P, App. 1 § 112.00E(4).

The Commissioner goes on to point out the ALJ omitted consideration of Dr. Yarmel's important assessment that "J.S. continues to present as a little boy who experiences difficulty staying focused and attentive for more than 5 minutes at a time." (Tr. 148, repeated at 212). It is also pointed out that the ALJ omitted Dr. Ransom's assessment that J.S.'s WPPSI-R scores revealed "overall functioning in the borderline range, performance functioning in the borderline range, and verbal functioning in the mentally deficient range." (TR. 259) Also, the ALJ omitted Ms. Tamara Hittepole's (J.S.'s speech-language pathologist) conclusion in her February 25, 2002 evaluation by omitting Ms. Hittepole's assessment that J.S.'s language delays may have a negative effect on his ability to function in academic situations." (Tr. 19, 274) Finally, in support of its motion for remand, the Commissioner states that ". . . the ALJ [on remand] will fully evaluate the opinion of Drs. Yarmel and Ransom, Ms. Hittepole and Mr. Casini and obtain updated medical evidence, if needed." Commissioner's Memorandum, p. 6.

This Court commends the Commissioner for its frankness and forthrightness in setting forth the deficiencies in the ALJ's evaluation of the complete record and the opinions of the

14

caretakers and experts. However, this Court determines that the record is complete and that a remand for further proceedings would serve no purpose. This record clearly demonstrates that there is substantial evidence to support a finding that the plaintiff is disabled and that the case should be remanded for the sole purpose of calculation and payment of benefits.

## CONCLUSION

I find that there is not substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the decision of the Commissioner denying plaintiff's disability claim is reversed, the plaintiff's motion for summary judgment is granted, the defendant's motion for judgment on the pleadings is denied and the case is remanded solely for the calculation of benefits.

ALL OF THE ABOVE IS SO ORDERED.

                                          S/Michael A. Telesca
                                          _____
                                          MICHAEL A. TELESCA
                                          United States District Judge

DATED:    Rochester, New York
               September 20, 2006